IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**W. JOSEPH LeMAY & E.T.,**
By his father and legal guardian,
W. Joseph LeMay,

    Plaintiffs,

vs.                                                                                          Civ. No. 08-712 JH/CEG

**ELISABETH BOGGS**, individually and in her
capacity as Special Education Director for Columbus
Elementary School, **HECTOR MADRID**, individually
and in his capacity as Principal of Columbus Elementary
School, **DEBORAH R. BURTNETT**, individually and in
her capacity as Special Education Instructor at Columbus
Elementary School, "**MAGGIE" CALDERON**, individually
and in her capacity as a Special Education Teacher's Aid
at Columbus Elementary School, JOINTLY AND
SEVERALLY,

    Defendants.

**MEMORANDUM OPINION AND ORDER DISMISSING COMPLAINT**

    This matter comes before the Court on the Defendants' Motion to Dismiss, filed in lieu of an answer on October 6, 2008 [Doc. 4]. Plaintiff W. Joseph LeMay appears pro se on behalf of himself and, previously, for his minor son, E.T. ("Tony"). Having fully considered the parties' briefs, the Complaint, and the relevant law, the Court concludes that it must dismiss all of the claims in the Complaint without prejudice.

**I.**      **FACTUAL ALLEGATIONS OF THE COMPLAINT**

    The Court accepts as true, for purposes of resolving the motion to dismiss, the allegations in the Complaint. Tony, who was born in May 1997, has been diagnosed as "developmentally delayed" with "severe speech and language impairment." Complaint at 2 (Doc. 1). He was identified as a "student with disabilities" under the Individuals with Disabilities Act ("IDEA") and

was first enrolled in a special education class at Columbus Elementary School in 2003 and did well. *See id.* He moved to Mexico in May 2004 and attended school there, where he was subjected to abuse, until June 2005. *See id.* Upon his return to Columbus, LeMay asked the school to evaluate Tony, and they responded that they would do so, presumably when classes resumed. *See id.* Tony was given an individualized education plan ("IEP") by a committee, which adopted the school's social worker's recommendation that Tony again be placed in a special education class with a special education teacher and teacher's aid. *See id.* at 2-3. There were only four or five other special education students at the school. *See id.* at 5. LeMay characterizes Tony's special education situation as "isolation," and alleges that Tony ate a cold lunch while isolated in the classroom and did not have recess or gym, and that he did not have "normal interaction" with his peers for almost a year. *See id.* at 3. Tony reported being kicked and slapped by other students and had bruises on his legs, but when LeMay inquired about it, the teachers responded, "you should see what he did to her," apparently referring to the student who had kicked Tony. *Id.* Tony's teachers alleged that he engaged in "inappropriate touching, striking, or some other type of unacceptable behavior." *Id.* at 4. Tony was incontinent at times. *See id.* at 3.

The social worker eventually recommended that Tony be evaluated at UNM Children's Hospital to ensure he did not have brain damage; Tony was diagnosed as having post-traumatic stress disorder in April 2006. *See id.* at 3-4. Thereafter, Tony was seen by a school psychologist who became a member of his IEP committee. *See id.* at 4.

LeMay contends that Tony was entitled to have a personal aide who would help only him with "minimal normal every day activities that would help him integrate" into regular classrooms instead of being "almost isolated" in the special education class with an "overburdened teacher." *See id.* He alleges that Defendant Boggs "intentionally failed to have the personnel involved with

Tony properly trained," and "allowed a highly unskilled, unqualified aide to have her way in disciplining Tony." *Id.* at 4.  The Complaint alleges that the special education teacher (apparently Defendant Deborah Burtnett) and aide (apparently Defendant Maggie Calderon) were not supervised by Boggs or by Principal Madrid, and that, although Boggs had "scheduled" the two for training, Boggs failed to have them trained in "sensitivity or non-violent crisis intervention," as required by the IED. *Id.*   LeMay alleges that, during the last week of July or first week of August 2006, Burtnett assaulted and battered Tony by "tugging" on or "dragging" him down the hall to the principal's office while lifting his upper arm high enough that he was traveling on the balls of his feet, causing him to "skip his steps" at least once. *See id.* and Ex. 1.  One witness reported that Tony smiled and said "hi" to him as he was being pulled down the hall; *see id.* Ex. 1; the other witness stated that Tony's "gaze looked like he was nonplussed," *id.*, Ex. 2.  Both witnesses were parents of other children who were in special education classes. *See id.* Exs. 1, 2.

LeMay brought up the matter of Burtnett pulling Tony down the hall with Madrid at the following IEP meeting, but Madrid "glossed over" it. *See id.* & Ex. 1. The school's social worker interviewed the two witnesses, however, and allegedly told one of them, "You attack one of us, you attack us all." *Id.*   After LeMay complained to the state Education Department about Burtnett's behavior, the State Education Ethics Bureau conducted a separate investigation.  It concluded that LeMay's allegations against Burtnett were "unsupported," and closed its investigation. *See id.*, Ex. 3.

After the incident, Burtnett allegedly accused LeMay of not "medicating his son" after an "incident" at school. *Id.* at 5.  LeMay states that the Defendants then began refusing to respond to his complaints and increased their reporting of Tony's alleged misconduct at school in an effort to "substantiate their defenses." *Id.*   LeMay contends that Boggs failed to ensure that her staff

3

complied with Tony's IEP. He contends that an unnamed Defendant "intentionally denied" Tony the opportunity to become socially adjusted. *Id.* at 6. He contends that Boggs, Madrid, and the Social Worker, who has not been sued, "failed to protect" Tony from his teachers, thereby creating a "hostile environment." *Id.*

LeMay alleges that, after Tony was dis-enrolled from school and hospitalized for two months, LeMay received "counsel and medical advice" that Tony should not be returned to the same situation at school, so he requested "Homebound Services." *Id.* When Boggs required Tony to be re-enrolled in school in order to receive those services, LeMay refused to re-enroll him, so the services were not provided. *See id.*

LeMay states that he did not go through any "administrative processes" before filing suit in federal court because they were "too time-consuming and too late," and because he believed he would receive a "rubber stamp" because of the result of the State's Education Ethics Bureau's investigation. *See id.*

LeMay's requests for relief are quite confusing. In various headings, he purports to bring claims under the IDEA, 20 U.S.C. §§ 1400 *et. seq*,; under § 504 of the Americans with Disabilities Act ("ADA"), under 42 U.S.C. Sections 1983 through 1985 (for alleged violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment), and under Title One of the No Child Left Behind Act. *See* Complaint at 1. His claims for relief, however, allege only violation of Tony's right to a free, appropriate public education, which is a claim for violation of the IDEA. *See* 20 U.S.C. § 1400(d)(1)(A)(stating that the purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education"). Count I of the Complaint notes the existence of a common-law tort of assault and battery but states, "the real issue is that one in loco parentis entrusted with a handicapped child whose known disabilities are related

4

to abuse cannot be allowed to reinforce the emotional disturbance and effectively make him a victim, denying appropriate free public education." *Id.* Count II alleges that the Defendants denied Tony a "free, appropriate public education" by ignoring LeMay's pleas and denying his requests for specific services for no reason other than "financial constraints," for the "convenience of the overburdened, underqualified Special Education personnel involved," and to cover up the Defendants' "violations of required educational procedures." *Id.* at 7. Count III, the most confusing paragraph, states:

> The Corporate bottom line prevailed of budget mismanagement or misappropriation of Federal Funds a failure to train or properly supervise personnel despite the Defendants own IEP directives contrary to the best interests of Plaintiffs with the attending increased trauma and created mistrust resulting in the discriminatory denial of a Free Appropriate Public Education, free from abuse, hostility and segregation for Plaintiff's son and all Special Education students in the Defendants care and custody during the period in question and possibly continuing to this day.

*Id.* LeMay requests compensatory damages in an unspecified amount for "continuing costs of Plaintiff's minor son," punitive damages, and unspecified injunctive relief.

## II.     STANDARD OF REVIEW

A complaint does not require "detailed factual allegations," but the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007)(internal quotation marks and bracket omitted).  A complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Id*. at 1974.

In resolving a motion to dismiss brought under rule 12(b)(6), the court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level," while assuming "that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at

1965 (internal quotation marks omitted).

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [*Bell Atl. Corp. v. Twombly*, 127 S Ct.] at 1974. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [*Bell Atl. Corp. v. Twombly*, 127 S. Ct.] at 1965 n. 3. *See Airborne Beepers & Video*, *Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Id.*

*Id.* at 1248.

Thus, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based," even in a complaint prepared by a pro se plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," which "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.*

### III.   DISCUSSION

####    A.   Claims On Behalf of E.T.

The Defendants urge two bases for dismissal of the claims Plaintiff brings on behalf of his minor son. First, they contend that, because LeMay is proceeding pro se, he can only assert his own legal claims and cannot speak for or represent Tony. The Court agrees. Courts have long ruled that one acting pro se may only represent himself. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam) ("We hold that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."). Because LeMay is not an attorney, he may sue on his own behalf but cannot bring Tony's claims to court.

The Court notes that, three weeks after the Defendants filed their motion to dismiss, an attorney entered an appearance in this case "on behalf of 'E.T.', a minor child, at the request of his father." Doc. 9 at 1. However, to date that attorney has not filed a single document or amended pleading in this case. It was LeMay who responded to the motion to dismiss, purportedly on behalf of himself and Tony. At the same time, Tony's attorney has failed to respond to the Defendants' motion to dismiss on Tony's behalf. Though he has entered his appearance, it does not appear that the attorney has done anything to represent his client in this litigation. Accordingly, the Court concludes that all of Tony's claims must be dismissed without prejudice. Tony's attorney may file a complaint on his behalf at a later date if the attorney determines under FED. R. CIV. P. 11 that there is a valid basis for doing so.

The Defendants next urge dismissal of all of Tony's claims based on alleged violation of the IDEA because LeMay "admit[s] that they have not exhausted the IDEA administrative

processes." The Court agrees and dismisses both LeMay's and Tony's IDEA claims on this alternate ground. The Tenth Circuit has held that exhaustion of administrative remedies is required if "the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *Padilla v. School Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000); *see Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996) ("The purpose of the exhaustion rule is to permit agencies to exercise discretion and apply their expertise, to allow the complete development of the record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors."); *Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 813 (10th Cir. 1989). Further, the Tenth Circuit has noted that "proper conduct and education are inextricably intertwined," and has held that "the discipline of a child in the classroom . . . is a matter that relates to the public education of a handicapped child and that therefore falls within the scope of [IDEA's predecessor]." *Hayes*, 877 F.2d at 813 (internal quotation marks omitted).

Further, the IDEA expressly requires exhaustion of its administrative procedures before bringing a civil action for any other "remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities" if "relief [] is also available" under the IDEA. 20 U.S.C. § 1415(l); *see Padilla*, 233 F.3d at 1274.[1] Although LeMay contends that the administrative process is "too time-consuming and too late," that does not relieve him of his statutory obligations to go

---

[1] For a thorough discussion of the rights of parents and children under the IDEA, as well as the procedures to be followed in order to pursue those rights, see *Winkelman ex rel. Winkelman v. Parma City School Dist.*, 550 U.S. 516, 127 S. Ct. 1994 (2007).

through that process if he desires to pursue his and Tony's rights under the IDEA.  *See Winkelman*, 127 S. Ct. at 2001-02;  *Padilla*, 233 F.3d at 1274; *Hayes*, 877 F.2d at 813.  Neither Joseph LeMay nor Tony may bring any federal claims based upon alleged violation of the IDEA until they have exhausted their administrative remedies.

> **B.** **Claims by Joseph LeMay**

A review of his complaint reveals that, other than his claim as a parent under the IDEA, Joseph LeMay has stated no facts to support any claim for violation of his own legal rights.  In his response to the motion to dismiss LeMay fails to explain what other legal claims, if any, he is asserting on his own behalf.  As discussed above, LeMay's IDEA claim should be dismissed for failure to exhaust administrative remedies.  Therefore, the Court will dismiss without prejudice all of Joseph LeMay's claims purportedly brought under any statute or common law theory.

**IT IS THEREFORE ORDERED** that the *Defendants' Motion to Dismiss* [Doc. 4] is **GRANTED** and that all of the claims in the Complaint are dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE